IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEPHANIE GABRIELLE NOGALES,    )
                                )
            Plaintiff,          )
                                )
    v.                          )          1:25CV503
                                )
DIRECTOR OF UNITED STATES       )
CITIZENSHIP AND IMMIGRATION     )
SERVICES,                       )
                                )
            Defendant.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Stephanie Gabrielle Nogales seeks judicial review of the denial of her application for naturalization. Defendant Director of United States Citizenship and Immigration Services ("USCIS") moves to dismiss her complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docs. 8, 9.) USCIS contends that, because Nogales was placed in removal proceedings before initiating judicial review of the denial of her application for naturalization, the court lacks subject matter jurisdiction or, at minimum, she fails to state a claim upon which relief may be granted. (Doc. 9 at 1-2.) Alternatively, USCIS argues that the court should stay this case until Nogales's removal proceedings have concluded. (Id. at 2.) Nogales has filed a response in opposition (Doc. 10), and USCIS replied (Doc. 12). USCIS also filed a notice of supplemental information (Doc. 13), to which

Nogales responded (Doc. 14).  For the reasons set out below, USCIS's motion to dismiss will be denied.

## I.  BACKGROUND

The facts, taken from the complaint and viewed in the light most favorable to Nogales, are as follows:

Nogales, who resides in Durham, North Carolina, is a native citizen and national of Ecuador and Italy.  (Doc. 1 ¶ 1.)  She is also a lawful permanent resident of the United States, and she married her husband, a United States citizen, in March 2004.  (Id. ¶¶ 7, 9.)  Nogales's husband is a Marine Corps veteran who served in Iraq prior to 2004 and, as a result, suffers from post-traumatic stress disorder ("PTSD").  (Id. ¶ 10.)  At the demands of her husband, Nogales registered to vote and then voted in the 2004 election – although she alleges that she first explained to polling station volunteers that she was not a United States citizen and even presented her Italian passport.  (Id. ¶¶ 15-20.)  Nogales's husband eventually received help for his PTSD, and he and Nogales remain together and share four children.  (Id. ¶¶ 22-25.)

In August 2023, Nogales submitted a Form N-400, Application for Naturalization, to USCIS.  (Id. ¶¶ 28-29.)  However, after an interview, USCIS denied her application because she failed to sufficiently demonstrate that she had registered to vote and, ultimately, voted in the 2004 election because of coercion from her husband.  (Id. ¶¶ 30-31.)  Nogales appealed this denial via

2

Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, in February 2024, and USCIS affirmed the denial in April 2025. (Id. ¶¶ 32, 34.) Finally, in May 2025, USCIS issued Nogales a notice to appear in immigration court for removal proceedings. (Id. ¶ 35; see Doc. 9-1 at 1.)

Approximately one month after USCIS issued the notice to appear, Nogales initiated the present action seeking review of USCIS's denial of her naturalization application pursuant to 8 U.S.C. § 1421(c). (Doc. 1 ¶¶ 39-40.) Nogales requests that the court first "[d]etermine and declare" that she is eligible for naturalization. (Id. ¶ 46.) She then asks that the court order USCIS to schedule an oath ceremony within 30 days, allow Nogales to take the oath, and issue her a naturalization certificate. (Id. ¶ 47.) In October 2025, USCIS filed the present motion to dismiss. (Doc. 8.) The motion is now fully briefed and ready for decision.

## II. ANALYSIS

### A. Standard of Review

#### 1. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction," in that "[t]hey possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The plaintiff bears the burden of establishing jurisdiction. Id. "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is

3

afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). Accordingly, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Id.

### 2. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss" pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A Rule 12(b)(6) motion "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citation omitted). However, pleadings that "are no more than conclusions[] are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

4

And mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

    **B.    Whether the Court Must Dismiss Nogales's Complaint**

Nogales brings this lawsuit pursuant to 8 U.S.C. § 1421(c), which grants de novo judicial review of USCIS's denial of her application for naturalization. Specifically, § 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

USCIS contends that the court should dismiss Nogales's claim pursuant to 8 U.S.C. § 1429. (Doc. 9 at 5.) USCIS argues that, because removal proceedings against Nogales began prior to her filing of this lawsuit, § 1429 either strips the court of jurisdiction over this case or bars a meaningful remedy. (<u>Id.</u> at 7-8.) Nogales counters that § 1429 does not apply because USCIS never placed her in removal proceedings pursuant to a warrant of arrest. (Doc. 10 at 2-3.) Rather, she alleges that she merely received a notice to appear in immigration court. (<u>Id.</u>; Doc. 1 ¶¶ 35-36.) And even if § 1429 applies to her request for judicial review, Nogales asserts, the court retains the authority to issue

5

a declaratory judgment as to her application for naturalization. (Doc. 10 at 7 (citing cases).)

Under § 1429, "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding <u>pursuant to a warrant of arrest</u> issued under the provision of this chapter or any other Act." 8 U.S.C. § 1429 (emphasis added). The agency tasked with interpreting § 1429 has promulgated a regulation that "a notice to appear . . . shall be regarded as a warrant of arrest." 8 C.F.R. § 318.1.

Here, the parties agree that Nogales's removal proceedings commenced upon the issuance of a notice to appear, rather than a warrant of arrest. (Doc. 10 at 2; Doc. 12 at 2.) The question is therefore "whether this regulation, 8 C.F.R. § 318.1, is an improper interpretation by an administrative agency of Congress's use of 'warrant of arrest' in § 1429." <u>Murray v. Cissna</u>, No. 18-cv-2059, 2019 WL 2358951, at *2 (D.S.C. June 4, 2019).

Courts must "exercise independent judgment in construing statutes administered by agencies." <u>Loper Bright Enters. v. Raimondo</u>, 603 U.S. 369, 406 (2024). Thus, courts no longer proceed under the two-step process laid out in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984), which required judicial deference to administrative interpretations if "Congress has not directly addressed the

6

precise question at issue."

Even before the <u>Chevron</u> doctrine's demise, courts often determined that the plain terms of § 1429 unambiguously foreclosed the agency's interpretation that Congress's use of "warrant of arrest" encompasses a notice to appear. <u>See, e.g.</u>, <u>Yith v. Nielsen</u>, 881 F.3d 1155, 1166 (9th Cir. 2018); <u>Adegbesote v. Tritten</u>, No. 20-1940, 2021 WL 5995198, at *6 (D. Minn. June 2, 2021); <u>Calvo v. Garcia</u>, No. 20-CV-2029, 2021 WL 2324176, at *7 (N.D. Tex. May 7, 2021), <u>report and recommendation adopted</u>, 2021 WL 2315515 (N.D. Tex. June 7, 2021); <u>Murray</u>, 2019 WL 2358951, at *3; <u>Sanga v. Barr</u>, 706 F. Supp. 3d 803, 815 (S.D. Iowa 2020); <u>Kabura v. McNeer</u>, 448 F. Supp. 3d 1274, 1281-82 (D. Utah 2020). <u>But see, e.g.</u>, <u>Klene v. Napolitano</u>, 697 F.3d 666, 670 (7th Cir. 2012) (holding that "there's no logical problem with an agency calling its official process a 'notice to appear' and a 'warrant of arrest' at the same time" because "'arrest' does not imply custody even in police parlance"). Since the Court's decision in <u>Loper Bright</u>, no district court appears to have found § 318.1 to be a reasonable interpretation of § 1429. <u>See</u> <u>Samuel v. Bondi</u>, 812 F. Supp. 3d 931, 935-37 (D. Minn. 2025); <u>Mathin v. Mayorkas</u>, 746 F. Supp. 3d 1327, 1336 (M.D. Fla. 2024).

The Ninth Circuit's reasoning in <u>Yith</u>, upon which Nogales relies heavily, is persuasive. First, the court noted that a "warrant" is defined as "[a] writ directing or authorizing someone

7

to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure," while an "arrest" is defined as "[a] seizure or forcible restraint" or "[t]he taking or keeping of a person in custody by legal authority, esp. in response to a criminal charge." Yith, 881 F.3d at 1166 (alterations in original) (quoting Black's Law Dictionary (10th ed. 2014)). Second, the court defined "warrant of arrest" as "[a] warrant issued by a disinterested magistrate after a showing of probable cause, directing a law-enforcement officer to arrest and take a person into custody." Id. (alteration in original) (quoting Black's Law Dictionary (10th ed. 2014)). "In other words, the plain meaning of the term 'warrant of arrest' is an order authorizing law enforcement to seize and detain a person as necessary for the administration of law." Id. The court therefore concluded that a warrant of arrest "is a distinct document" from a notice to appear, which is "akin to a summons." Id. at 1166-67. Indeed, the USCIS treats them separately. (Contrast Doc. 9-1 (Form I-862, Notice to Appear), with Doc. 10-2 (Form I-200, Warrant for Arrest of Alien).)

Further, in Yith, the court noted that all removal proceedings require a notice to appear. Yith, 881 F.3d at 1167. But only a subset of removal proceedings is initiated by the issuance of a warrant of arrest. Id. Thus, the court reasoned, "[i]f Congress intended to preclude the government's consideration of a

8

naturalization petition whenever the applicant was in removal proceedings, then it would have had no need to state that § 1429 is applicable only when a removal proceeding is 'pursuant to a warrant of arrest.'" Id. Indeed, to hold otherwise would be "contrary to our general reluctance to treat statutory terms as surplusage." Id. (citation modified) (quoting Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 563 U.S. 776, 788 (2011)).

USCIS cites Barnes v. Holder, 625 F.3d 801, 806 (4th Cir. 2010), to argue that the court lacks jurisdiction where the alien seeks judicial review of her denied naturalization application after the initiation of removal proceedings. (Doc. 9 at 7-8.) Notably, the petitioner in Barnes had not received a decision on an application for naturalization when the Department of Homeland Security ("DHS") commenced removal proceedings. Barnes, 625 F.3d at 802-03. The court held that "[a] harmonious reading of § 1421(c) and § 1429 leads to the conclusion that an alien has a statutory right to review of his naturalization application, unless he is in removal proceedings." Id. at 806. The court further reasoned that "[b]ecause, under § 1429, an alien in removal proceedings does not have a right to have his application adjudicated, it follows that he cannot possibly have a right to have the adjudication judicially reviewed." Id.

Barnes does not direct an outcome in this case, however.

9

First, the court in <u>Barnes</u> did not include the "pursuant to a warrant of arrest" portion of § 1429 in its quotation of the statute, let alone address the issue now before this court: whether § 1429 applies where an alien's removal proceeding is initiated via a notice to appear rather than a warrant of arrest.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Webster v. Fall</u>, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").  Because this court finds § 1429 inapplicable where the removal proceedings were initiated pursuant to a notice to appear, it need not harmonize § 1429 with § 1421(c).

Second, as to the Fourth Circuit's proposition in <u>Barnes</u> that an alien "cannot possibly have a right to have the adjudication judicially reviewed" where he "does not have a right to have his application adjudicated," <u>Barnes</u>, 625 F.3d at 806, "[t]he court's point . . . was, simply, that so long as removal proceedings remained pending, DHS could not render a decision on [the petitioner's] application, and without a DHS decision, there would be nothing for a district court to review under § 1421(c)," <u>Dilone v. Nielsen</u>, 358 F. Supp. 3d 490, 502 (D. Md. 2019).  Here, unlike the petitioner in <u>Barnes</u>, Nogales already received a decision from USCIS on her application for naturalization <u>before</u> the initiation of removal proceedings.  (Doc. 1 ¶¶ 30-34.)  Accordingly, even if

10

§ 1429 were to apply, the court's holding in <u>Barnes</u> would not bar her right to have the adjudication judicially reviewed. <u>See</u> <u>Kuffour v. Nielsen</u>, 412 F. Supp. 3d 581, 590 (M.D.N.C. 2019) ("At best, <u>Barnes</u> answers a specific question in light of a specific factual scenario: What is the impact of § 1429 on the right to judicial review when a noncitizen files a naturalization application after removal proceedings have already begun?").

Ultimately, the analysis of <u>Yith</u> is most persuasive.[1] Section 1429 does not apply because Nogales is not in removal proceedings "pursuant to a warrant of arrest," and thus it does not strip the court of jurisdiction or the ability to provide a meaningful remedy.

### C. Whether the Court Should Stay This Action

USCIS next argues that, even if not subject to dismissal pursuant to § 1429, the court should stay this case to promote judicial economy and give effect to Congress's intent to prioritize

---

[1] USCIS cites both <u>Klene</u>, 697 F.3d at 670, and <u>Gardener v. Barr</u>, No. 18 CV 620, 2019 WL 1001340, at *6 (E.D. Mo. Mar. 1, 2019), to argue against the conclusion in <u>Yith</u>. Neither court, however, employed any of the ordinary tools of statutory interpretation. For example, in <u>Gardener</u>, the court described the Ninth Circuit's approach as "ultimately unworkable" before noting that "[t]he Ninth Circuit's conclusion basically rests on a finding that 'warrant of arrest' has a fixed meaning such that any other agency interpretation would, in effect, be inconsistent with the plain language of the statute." <u>Gardener</u>, 2019 WL 1001340, at *6. But the first aim of statutory interpretation in fact "is to determine whether [a statute's] language 'has a plain and unambiguous meaning.'" <u>Alvarez Ronquillo v. Bondi</u>, 151 F.4th 522, 526 (4th Cir. 2025) (quoting <u>Lee v. Norfolk S. Ry. Co.</u>, 802 F.3d 626, 631 (4th Cir. 2015)).

removals over naturalizations.  (Doc. 9 at 9.)  Further, USCIS contends that a declaratory judgment issued while removal proceedings are pending against Nogales "would be a futile act and only produce an unenforceable advisory opinion."  (Id. at 10.) Nogales counters that a stay would "have the same effect as granting th[e] motion to dismiss" because her removal proceedings could go on for years.  (Doc. 10 at 8.)  Nogales also asserts that the outcome of her removal proceedings is not dispositive of this case.  (Id. at 11.)

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Maryland v. Universal Elections, Inc., 729 F.3d 370, 379 (4th Cir. 2013) (alteration in original) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  "The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket."  United States v. Ga. Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977) (per curiam).  Moreover, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."  Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).

12

In support of its request for a stay, USCIS cites <u>Hernandez Alvarado v. Jaddou</u>, 20CV538, 2021 WL 7162561, at *3 (M.D.N.C. Aug. 19, 2021), <u>Dilone</u>, 358 F. Supp. 3d at 504, and <u>Murray</u>, 2019 WL 2358951, at *3. (Doc. 9 at 9.) However, these cases are not directly on point because, in each, the plaintiff asked the court to adjudicate his or her application for naturalization pursuant to 8 U.S.C. § 1447(b), which permits judicial adjudication of an application when USCIS fails to grant or deny the application within 120 days of the applicant's initial examination. Here, the Attorney General fully adjudicated Nogales's application for citizenship before USCIS commenced removal proceedings and before she initiated this lawsuit, and Nogales seeks judicial review of that <u>denial</u> pursuant to § 1421(c).[2]

The ability to obtain de novo judicial review pursuant to § 1421(c) "ensures that district courts retain the final word on naturalization applications." <u>Etape v. Chertoff</u>, 497 F.3d 379, 386 (4th Cir. 2007). Some courts have concluded that § 1429 does not prevent entry of a declaratory judgment of entitlement to citizenship when a person seeks review of her application for naturalization pursuant to § 1421(c). <u>See, e.g.</u>, <u>Klene</u>, 697 F.3d

---

[2] As a result, this case is more like <u>Ghadrdan v. Noem</u>, No. 24-CV-159, 2025 WL 2058778 (W.D.N.C. July 23, 2025), which Nogales cites. The only procedural difference is that, in <u>Ghadrdan</u>, the plaintiffs filed their request for judicial review pursuant to § 1421(c) after the denial of their applications but <u>before</u> USCIS's initiation of removal proceedings. <u>See Ghadrdan</u>, 2025 WL 2058778, at *3. Here, as already noted, Nogales filed this lawsuit <u>after</u> she received her notice to appear.

13

at 669; <u>Gonzalez v. Sec'y of Dep't of Homeland Sec.</u>, 678 F.3d 254, 260 (3d Cir. 2012); <u>Kuffour</u>, 412 F. Supp. 3d at 594; <u>see also</u> <u>Ngwana v. Att'y Gen.</u>, 40 F. Supp. 2d 319, 322 (D. Md. 1999) (finding that the court could issue an order to the Attorney General to grant the alien's naturalization application pursuant to § 1421(c) even after the commencement of removal proceedings pursuant to § 1429). Both the text of § 1429 and the relevant legislative history support this conclusion.

Starting with the statute, § 1429 bars "the Attorney General" from considering an application for naturalization if a removal proceeding is pending. It places no such restriction on district courts. <u>See Kuffour</u>, 412 F. Supp. 3d at 590 ("There is 'no hint in the language of § 1429 that it also applies to the courts.'" (quoting <u>De Lara Bellajaro v. Schiltgen</u>, 378 F.3d 1042, 1046 (9th Cir. 2004))).

Next, for much of the twentieth century, the judicial branch exercised responsibility over naturalizations, while the Attorney General exercised authority over deportations. This division of labor created a situation where an alien might "find himself in a race against the government, with the alien pressing the court to grant him citizenship before the government could order his removal from the country." <u>Dilone</u>, 358 F. Supp. 3d at 495 (citing <u>Shomberg v. United States</u>, 348 U.S. 540, 544 (1955)). To end this race, Congress amended the immigration laws in 1950 to add a priority

14

provision, which read in relevant part: "[N]o petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest . . . ." See Internal Security Act of 1950, Pub. L. No. 81-831, 64 Stat. 987, 1015 (1950).

In 1990, "Congress sought to address an altogether different problem with naturalization proceedings – specifically, the stress they were putting on district courts' dockets." Dilone, 358 F. Supp. 3d at 496 (citing Etape, 497 F.3d at 386). As part of its effort to streamline the naturalization process by shifting authority over naturalizations from the judiciary to the Attorney General, Congress amended the text of § 1429 to substitute the words "considered by the Attorney General" for "finally heard by a naturalization court." See Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5041 (1990). But Congress also "recognized the long-standing power the district courts had possessed over naturalization applications and so provided in the new statute that district courts retained their power to review an application if an applicant so chose." Etape, 497 F.3d at 386. Congress thus included § 1421(c) "because it did not want to 'take away any of the judicial review rights accorded applicants' in the predecessor legislation." Id. (quoting 135 Cong. Rec. 16996 (1989)).

The Nation's immigration laws, created over different times and modified over the years, are complex and sometimes difficult to comprehend. Indeed, the Fourth Circuit has noted that "[t]he proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate." Romero v. Bondi, 150 F.4th 332, 340 (4th Cir. 2025) (alteration in original) (quoting Nehad v. Mukasey, 535 F.3d 962, 967 (9th Cir. 2008)). However, considering Congress's express prohibition against the Attorney General acting once removal proceedings are commenced, its maintenance of judicial review, and in light of the historical record, it would seem contrary to conclude that Congress intended the court to stay the present proceeding and delay judicial review of Nogales's adjudicated application merely because USCIS issued Nogales a notice to appear before she filed the present lawsuit seeking such review. Indeed, "the judiciary's authority under § 1421(c) would be rendered void if the Executive Branch could defeat any application for naturalization simply by initiating removal proceedings." Sanga, 706 F. Supp. 3d at 821 (citing Gonzalez, 678 F.3d at 260-61). And because Nogales's application was fully adjudicated before USCIS commenced removal proceedings, this case also presents no risk of restarting the "race" Congress once sought to end. See Ghadrdan v. Noem, 24-CV-159, 2025 WL 2058778, at *4 (W.D.N.C. July 23, 2025) (declining to stay judicial review of the petitioners' applications for naturalization in part

16

because "[i]gnoring the Court's clear statutory authority and permitting USCIS to be the sole arbiter of naturalization and deportation" would contradict "Congress's intention of protecting applicants' rights via court review").

Moreover, as Nogales points out, USCIS makes no argument as to how a stay would not prejudice her. On the other hand, Nogales persuasively contends that her removal proceedings could stretch on for, at a minimum, months while she awaits a removal decision and pursues a separate appeal. (Doc. 10 at 8-9.) This indeterminate state of limbo is prejudicial to her desire to timely resolve her application. And as for judicial economy, while some factual determinations may indeed overlap between her removal proceedings and this court's review of her application for naturalization, § 1421(c) nevertheless directs that the court "shall make its own findings of fact and conclusions of law." See Maslenjak v. United States, 582 U.S. 335, 347-48 (2017) ("[T]o ensure right results are reached, a court can reverse [USCIS's] determination, at an applicant's request, based on its 'own findings of fact and conclusions of law.'" (quoting § 1421(c))).

Next, although USCIS argues the court cannot naturalize Nogales if she is removable (Doc. 12 at 8), the cited portion of § 1429 prohibits the naturalization of persons "against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest." As already discussed, no warrant of arrest

17

has been issued against Nogales.  Further, neither party disputes that she is not yet subject to a final removal order – rather, Nogales attended her first master calendar hearing on November 12, 2025.  (Doc. 13; see Doc. 13-1.)

Finally, via a single sentence with a single citation in both its supporting and reply briefs, USCIS contends that the court's review of Nogales's application for naturalization while her removal proceedings are pending would only produce an unenforceable advisory opinion.  (Doc. 9 at 10; Doc. 12 at 9.) But the cited case, Ebu v. United States Citizenship & Immigration Services, 134 F.4th 895, 903 (6th Cir. 2025), is readily distinguishable.  In Ebu, the Sixth Circuit based its holding that "a declaratory judgment would be an unenforceable advisory opinion" on the fact that removal proceedings had already begun before the plaintiff filed his application for naturalization. Ebu, 134 F.4th at 903.  USCIS therefore denied the alien's application for naturalization because of the already pending removal proceedings rather than its merits.  Id.  Thus, under Sixth Circuit precedent, the district court's review was "limited solely to 'review of that threshold determination' of whether USCIS properly denied the application under § 1429" based on pending removal proceedings.  Id. (quoting Zayed v. United States, 368 F.3d 902, 906 (6th Cir. 2004)).

Here, by contrast and as repeatedly noted, Nogales received

an adjudication on the merits of her application for naturalization <u>before</u> USCIS initiated removal proceedings.  (<u>See</u> Doc. 1 ¶¶ 30-34.)  The court now exercises judicial review over a fully adjudicated application pursuant to § 1421(c).  Accordingly, even if the Sixth Circuit's holding in <u>Ebu</u> were precedential authority, this court would not be limited to the "threshold determination" of whether USCIS properly denied Nogales's application because of already pending removal proceedings.

As courts across the country have repeatedly acknowledged, the declaratory relief sought by Nogales "strikes a balance between the petitioner's right to full judicial review as preserved by § 1421(c) and the priority of removal proceedings enshrined in § 1429." <u>Gonzalez</u>, 678 F.3d at 260; <u>accord, e.g.</u>, <u>Klene</u>, 697 F.3d at 668-70; <u>Idris v. Gray</u>, 22-CV-3894, 2023 WL 5719743, at *4-5 (E.D.N.C. June 9, 2023); <u>Adegbesote</u>, 2021 WL 5995198, at *7; <u>Kuffour</u>, 412 F. Supp. 3d at 592-93.  The preclusive effect of such declaratory relief on Nogales's removal proceeding is an issue for another day, however.  At this stage, it is enough to find that USCIS has not sufficiently justified a stay.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant USCIS's motion to dismiss (Doc. 8) is DENIED.

19

                                    /s/   Thomas D. Schroeder
                                  United States District Judge

May 8, 2026